*Respublica *against* William M'Clean, esq. [*399

A justice of the peace commissioned within a certain district and county, cannot act under his former appointment upon a division of the county, if he shall reside in the new county, though the district remains in it entire.

THIS was a motion, calling on the defendant to shew cause, why an information in the nature of *quo warranto*, should not be filed against him, for exercising the office of a justice of the peace in the county of Adams.

It was admitted, that William M'Clean was, on the 29th Au-gust 1791, duly appointed and commissioned to be a justice of the peace, in the district of Hamilton's Bann, in the county of York. That on the 22d January 1800, the said county of York was divided by the legislature, and part thereof erected into a separate county called Adams. That the said township of Ham-ilton's Bann lies now in Adams county; and that the district

now in the county of Adams, consists of the townships of Ham-
ilton's Bann, Franklin and Liberty, according to its former boun-
daries ; and that the said William M'Clean has continued, and
still does continue, to reside in the said township of Hamilton's
Bann, now in the county of Adams, and hath therein exercised
the office of a justice of the peace since the division of York
county aforesaid.

The motion to shew cause was made on the 1st January
1802, and then argued by Mr. M'Kean on the part of the com-
monwealth, and by Mr. Duncan on behalf of the defendant.
The court continued the matter under advisement, and after
consideration, the court were divided in their opinions, SHIPPEN,
C. J. and BRACKENRIDGE, J. being in favour of the motion, but
YEATES and SMITH, Justices, in opposition to it. No opinions
were then publicly delivered. During the present term, on the
23d March, the motion was again argued by the same counsel
(in the absence of SMITH, J. who was confined to his chamber
by sickness) substantially as before.

It is deemed unnecessary to specify their arguments, as they
are fully detailed in the opinions of the justices, who afterwards
on the 28th March, at the close of the term, delivered their
opinions *seriatim.*

TILGHMAN, C. J. The question for the court's decision is,
whether William M'Clean can lawfully exercise the office of a
justice of the peace for the county of Adams ? The facts, out
of which the question arises, have been stated.

By the 10th sec. of the 5th article of the constitution of
Pennsylvania, "the governor shall appoint a competent number
of "justices of the peace, in such convenient districts in each
*400]* " *county, as are or shall be directed by law. They shall
" be commissioned during good behaviour."

By the 8th section of the 2d article of the constitution, " no
" person shall be appointed to an office within any county, who
" shall not have been a citizen and inhabitant thereof, one year
" next before his appointment if the county shall have been so
" long erected ; but if it shall not have been so long erected,
" then within the limits of the county or counties, out of which
" it shall have been taken."

There is no express provision in the constitution, that county
officers shall continue to reside within their respective counties :
but it has always been understood, that if an officer removes out
of the county, for which he was appointed, his office becomes
void.

It is necessary in the first place to consider what was the ex-
tent of Mr. M'Clean's jurisdiction at the time of the division of
York county. He was commissioned as a justice of the peace,
in the district of Hamilton's Bann ; yet his jurisdiction was not
confined to that district, but extended through the county of
York. If that county had been increased or diminished, his

[Respublica *v.* M'Clean.]

jurisdiction would have increased or diminished accordingly. This I think, is universally agreed.

It is also agreed, that those justices who were commissioned before the division of York county, and who fell within that part which is still called York, are limited in their jurisdiction to the present county of York. It follows therefore, that the county is a very essential part of the commission of a justice of the peace. When the present constitution was framed, it was well understood, that the power of altering the bounds of counties, had always been exercised by the legislature, and that it was necessary that power should continue. It was understood too, that certain consequences necessarily flowed from the alteration of counties. In construing the constitution therefore, we must take care not to destroy those implied powers, without which society could not exist.

The legislature, in pursuance of their acknowledged power, divided the county of York. The consequence was, that Mr. M'Clean ceased to belong to the county of York; his actual residence was in another county; he no longer answers the description of his commission, which is for the county of York. It is true, he still lives in the same district, but that district never bounded his jurisdiction; it only marked his residence. This cause must be decided on general principles. The same law that governs Mr. M'Clean's case, must govern the case of every other justice, who lives in a newly erected county. Now to make the matter more plain, let us suppose a county newly *erected out of two or three old counties, as was the case [\*401 of Centre county, (which was composed of parts of four old counties,) I ask, what would be the jurisdiction of a justice, who belonged to one of the old counties, of which Centre is composed? Would his process run through the county of Centre? That is impossible, for he never was commissioned for Centre, nor for either of the sections of the old counties composing Centre, except that in which he resides. Shall he be restrained to that section of the old county, for which he was commissioned, which falls within Centre? That is a kind of jurisdiction unknown to the law, and which I believe is not contended for. I know of no way of avoiding these difficulties, but by adopting the plain principle, that his commission has necessarily become void, by the political annihilation of that part of the county, for which he was commissioned, and in which he resides. Mr. M'Clean was commissioned for the county of York; but he resides in the county of York no more.

I should feel greater difficulty in this case if it was entirely new. But it appears to me, that the principle which must decide it, has frequently occurred, and been acted upon for twenty years before the division of York county.

By the 30th section of the frame of government of the constitution made in 1776, justices of the peace were elected by the freeholders of each city and county; that is to say, two or more

[Respublica *v.* M'Clean.]

might be chosen for each ward, township or district, as the law should thereafter direct, of whom the Supreme Executive Council should commission one or more for each ward, township or district for seven years, removable for misconduct by the general assembly.    Now those justices had as absolute an interest in their offices, during the seven years for which they were commissioned, as the present justices have during their lives.    The first new county erected after the making of this constitution, was Washington, which was carved out of Westmoreland, and the act for its erection ( passed 28th March 1781 ) provided that the freeholders of each township or district should elect two fit persons for justices of the peace for each township ; which would have been improper, if any of the old justices had been authorized to act under their commissions.    From that time to the year 1790, when the present constitution was adopted, many new counties were erected ; and it will appear from the several acts of assembly erecting them, that it was taken for granted, that all authority of county officers, including justices of the peace, ceased in the new counties, immediately on their erection, unless it was otherwise provided by law.    Since the adoption of the present state constitution, the acts of assembly for erecting

*402]    *the counties of Somerset, Greene and Wayne, contain provisions respecting justices of the peace, incompatible with the idea of their having any authority by virtue of commissions granted before the erection of those counties.    It is true that a legislative construction of the constitution is not binding on courts of justice.    It has been so decided, and is understood to be the settled law.    But at the same time, it cannot be denied, but that a legislative construction, uninfluenced by party spirit, introduced soon after the making of a constitution, and frequently carried into effect without opposition for the course of twenty years, is entitled to very considerable weight.    The public happiness requires, that it should have weight.

But it has been strongly urged by the counsel for Mr. M'Clean, that the legislature having no right to annul by a direct act, the commissions of officers who held during good behaviour, cannot do it indirectly, and that the most pernicious consequences may flow from the exercise of this power for party purposes.    In answer to this, it may be said, that if the legislature was to make a division of a county for no other purpose than barely to deprive justices of the peace of their commissions, it would be a case very different from that which comes before the court, and concerning which it would be imprudent to deliver an unnecessary opinion.    It is not pretended that the county of York was divided for any such purpose. The question is, whether from an act of the legislature within their acknowledged powers, the destruction of Mr. M'Clean's commission does not necessarily follow ?    I will add, that the possible abuse of any given power, is no argument against the right to exercise it.    The same argument would take from the legislature, the

[Respublica *v.* M'Clean.]

rights of taxation, and innumerable other useful powers, which by supposing extreme cases, might be exercised to the ruin of the community.

Upon the whole I am of opinion, that upon a fair construction of the constitution, the tenure of a justice of the peace during good behaviour is subject to the implied condition of his remaining in the county named in his commission.    But while I deliver this opinion, it would be unbecoming in me to say, that the question is without difficulty.    I shall always feel diffidence, when this bench is divided.    It is proper to mention, that on the former argument, while I was at the bar, I understand, that the late chief justice Mr. SHIPPEN was of the same opinion which I now hold, and Judge SMITH was against it; and I have no reason to suppose, that Judge SMITH, whose absence is occasioned by sickness, has changed his opinion.

YEATES, J.    The abstract question before the court is whether *after a person had been duly commissioned as a justice [*403 of the peace, in a certain district and county, and has constantly resided, and still continues to reside in the same district, his commission is determined by such county being divided, and a new county struck off, into which the district falls ?

By the 30th section of the first state constitution of 28th September 1776, justices of the peace shall be elected by the freeholders of each county, two or more persons for each township or district, as the law should thereafter direct, and their names shall be returned to the president in council, who shall commissionate one or more of them for each township or district so returning, for seven years, removable for misconduct by the general assembly.

Under the act of 5th February 1777, the different counties were divided into a certain number of districts ; and the commissioners and assessors of each county were directed to meet on an appointed day and make such division ; and after ten days notice of the time and place of election, the freeholders of each district were to elect two fit persons for justices of the peace.    In pursuance thereof the county of York was divided into eighteen districts ; and the township of Hamilton's Bann therein, was formed, and still continues one district, for which the defendant has been commissioned.

Between 1777 and the 2d September 1790, when the constitution was amended, ten new counties were erected ; to wit, Washington, Fayette, Franklin, Montgomery, Dauphin, Luzerne, Huntingdon, Allegheny, Mifflin and Delaware.    In all the laws erecting these counties, there is an express clause, that the justices of the Supreme Court shall have like powers, jurisdictions and authorities, within each newly created county, as by law they were vested with and entitled to in the other counties within the state.    In Franklin county alone, the words of the provision are general, and relate to all courts.    And in the several laws,

except as to Washington and Luzerne, it is declared, that justices of the peace commissioned in the old counties, who should fall into the new counties, should have all the powers and jurisdiction in the new counties, which were attached to their former office, during the periods of their respective commissions.

It has been objected in the argument, that these last provisions evince the sense of the legislature, that without them, the commissions of the old justices would be vacated, if their lots were cast into the new counties. To this I answer, that these clauses can only be considered as merely declaratory of what would have been the constitutional effect of the division of each county. The omission of them, as to the counties of Washington and Luzerne, is readily accounted for, on the ground, that *404] *no commissions of justices of the peace existed as to the former county, by reason of the disputed jurisdiction and claim of Virginia, to that tract of country; nor as to the latter, by reason of the many intruders, pretending to hold under the Susquehannah company. As to what is now called Luzerne county, it appears by the act of assembly, passed 9th September 1783, (Loose Acts 197,) that the commissioners appointed by the state, to enquire into the cases of the settlers under the Connecticut claim, had made their report to the house of assembly; that they had subdivided Wioming township into three distinct townships, and that they had divided them into two districts for the election of justices of the peace; in pursuance whereof, eight persons had been elected; and the law directed, that four or more of the persons elected, should be commissioned as justices of the peace by the Executive Council. But afterwards, by a law passed on the 24th December 1785, (Ib. 6,) so much of the former act, as confirmed the divisions of those townships into districts, for electing justices of the peace, and impowered the council to commissionate four or more of the persons so elected, was repealed, and the commissions granted in pursuance of the law, were annulled and made void. The council of censors had before this period, expressed their opinions, as to the deviations of the legislature from the constitution in certain instances; as will hereafter appear when I come to mention the law of 4th April 1785; and it is highly probable, that the legislative interference, as to the creation of these justices of the peace, formed the constitutional ground, on which it was afterwards repealed.

The constitution was the paramount, fundamental law, prescribed by the people, limiting the exercise of power, by the general assembly; and the latter had no right to appoint justices of the peace, though they had the power of directing the division of districts, for the purposes of electing them. Hence the law of 31st March 1784, 2 Dall. St. Laws 200, Loose Acts 335–6, was enacted, which remedied the defect of former laws on this head; and in sect. 14, provided, that the president and council might form new and additional districts for justices of the peace,

[Respublica *v.* M'Clean.]

on the certificate of the Court of Quarter Sessions of the county, that such division became proper and would be useful. The 4th section contemplates justices of the peace continuing in their commissions for the residue of their seven years; and the 5th and 6th sections profess to fix a regular mode of holding future elections, to supply vacancies, happening by expiration of their commissions, death, resignation, removal out of the district, removal from office for misconduct, or upon the neglect or refusal of any person elected and commissioned to take upon him the office. Hence also arose the law of 4th March 1786, 2 St. Laws *424, Loose Acts 28, which enabled the president and vice president in council, to order a new and equal distri- [*405 bution of townships into districts. The 8th section assigns the number of justices of the peace to boroughs and county towns; and the 9th section provides, that no commission of any justice legally elected, shall be effected by any thing in the act.

The law of the 4th April 1785, Loose Acts, 546, asserts in the preamble, " that the due and orderly distribution and exercise of "the powers of government, as the same have been devolved by "the people to their trustees in the legislative, executive and " judicial departments of the state, is of great importance to the "liberty and happiness of the community, and every encroach- "ment made by any of these departments, on the rights and "privileges of the other, has a manifest tendency to disorder "and anarchy on the one hand, or to dangerous accumulations " of power on the other; and that the council of censors had " declared it to be their opinion, that the appointment of reve- "nue and all other officers not expressly assigned to the house " of assembly, or to the people by the constitution, which has " been exercised by the general assembly, is a deviation from "the constitution." It then proceeds to designate the choice of officers, reserved to the general assembly; and declares, that all those officers, save those specially reserved to the choice of the people, shall be nominated and appointed by the Supreme Executive Council. And in sect. 3, it is declared, that divers officers, who held their offices, by their names having been inserted in the body of acts of assembly, in derogation of the rights of the Executive Council, improperly held the same.

Afterwards, by an act passed on the 13th September 1785, Loose Acts 634, certain laws respecting the chief burgess of the borough of Lancaster, and the burgesses of the boroughs of Carlisle and Reading, were repealed, so far as they contradicted the constitution.

Upon this recapitulation, it cannot be pretended, as I conceive, that the general assembly could constitutionally make a justice of the peace, or remove him during his period of seven years, except for misconduct. When therefore we find clauses in the laws under the old constitution, erecting new counties, that the old justices of the peace, who might fall into the limits of the new counties, should be considered as justices of the

[Respublica *v.* M'Clean.]

peace of the new counties, I feel myself constrained to pronounce, that such clauses shall be deemed as declaratory of the constitution. In like manner, the legislature have declared, that the Supreme Court shall have and exercise jurisdiction in the new counties; but independent thereof, this court would certainly be competent *to this exercise of authority, under *406] the words and meaning of the constitution.

To declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative; and one of the fundamental principles of all our governments is, that the legislative and judicial departments shall be separated. 2 Cranch 277, assented to by the justices of the Supreme Court of the United States..

The new state constitution came into operation on the 2d September 1790. The 10th section of the 5th article of that instrument runs thus : " The governor shall appoint a competent " number of justices of the peace, in such convenient districts " in each county, as are or shall be directed by law : they shall " be commissioned during good behaviour; but may be removed " on conviction of misbehaviour in office, or of any infamous crime, " or on the address of both houses of the legislature." Since that time, the counties of Lycoming, Somerset, Greene, Wayne, Adams, Centre, Beaver, Butler, Mercer, Crawford, Erie, Warren, Venango and Armstrong have been erected; but of the last eight, Crawford only was organized, at the time of the former argument. Since that period, the counties of Jefferson, M'Kean, Clearfield, Potter, Tioga and Cambria have been erected by a law passed 26th March 1804. 6 St. Laws 365. The several laws which have effected these creations of counties, established by direct words the general authority of the Supreme Court over them, save as to Somerset county, which is reached by the general expressions of the 2d section of the act. 3 St. Laws 741. The acts which erect that county and Greene, have special clauses, that " all the justices of the peace then commissioned " for the old county, who reside within the limits of the new " county, shall be considered as, and shall be justices of the peace " for the new county :" but as to the other counties, there are no such words inserted.

I consider these clauses in the two acts, as strong arguments of legislative exposition of the constitution. Arguments have been drawn from that source by the attorney general. If the commissions of old justices of the peace resident in the new counties, were necessarially vacated by the division of the old counties, they could not constitutionally be revived by a law; but the governor must for that purpose exercise his undoubted executive right of appointing and commissioning them. The remark before made, as to the vesting power and jurisdiction in the Supreme Court over the new counties erected under the first constitution, is equally applicable to laws made since 1790, for the same purpose. The jurisdiction of this court by the 3d sec-

*tion of the 5th article of the constitution, extends over the whole state, and rests not on these laws.

It has however been objected, that the 7th section of the act erecting Wayne county, directs, "that the sheriff, coroner, or "other officers of the county of Northampton, other than the "justices of the peace, shall continue to exercise the duties of "their respective offices within the county of Wayne, until simi- "lar officers shall be appointed, agreeably to law, within the said "county."   4 St. Laws 241. . I answer, these words can mean no more, than that the justices of the peace, who live in North- ampton county, after Wayne county was struck off, shall not act as justices of the peace for Wayne county.   This will appear most clearly, by a reference to the laws of 17th April 1795, and 9th February 1796, erecting Somerset and Greene counties.   In the 8th section of both these acts, we find the same words as have been extracted from that respecting Wayne county ; but yet, in the 4th section of the Somerset law, it is declared, "that "all the justices of the peace now commissioned for the districts "of the present county of Bedford, who reside within the limits "of the county of Somerset, shall be considered as, and shall be "justices of the peace for the said county of Somerset."   3 St. Laws 742.   And the like words are used *mutatis mutandis,* in the 5th section of the Greene law.   4 St. Laws 5.   The 5th sec- tion of the act erecting Adams county, omits the words, "other "than the justices of the peace," though it enumerates the other officers.

It has been urged, though faintly, at the bar, that an altera- tion in the name of the county by law, may vacate the commis- sions of justices of the peace, inasmuch as they can no longer style themselves justices of the peace of the county, *eo nomine,* of which they were commissionated.   But this I cannot accede to ; because, if the legislature had thought proper to change the name of York county into Adams or Jefferson, instead of subdi- viding it, it would not, nor could not, operate as a determination of these commissions.   The districts of the justices would con- tinue, and the limits of the county would remain as before.   By operation of law the justices of the peace would assume the style and name appropriated to the county.

A more plausible objection remains to be considered, which is, that by a subdivision of the old county, the local extent of the justices' jurisdiction is abridged by law.   But if this be a solid ground, and enures as a virtual vacation of the commissions of old justices of the peace who may fall into the new county, must it not necessarily produce the same effect on the commis- sions of justices of the peace resident in the old county ?   The objection, if well founded, is applicable to each class of justices *of the peace ; because, by a division of the county, the jurisdiction of both must of course be diminished in point [*408 of local extent, and the argument would therefore prove too much.   My mind in this particular is satisfied by the considera-

tion, that the districts still continue, on which the appointments are constitutionally founded; that the jurisdiction of justices of the peace spreads over the whole county which comprehends the district; and therefore, that an alteration of the boundaries of the county wherein the districts originally lay, cannot impair the validity of the commissions. In this mode only can I reconcile the words of the constitution. The defendant here obtained no increased jurisdiction by a division of York county.

The present case is not that of a new county, composed of parts of old counties thrown together. It is wholly free of that difficulty. When such a case does occur, and the question arises on the validity of the commissions of the justices of the peace of the old counties cast into the new county, under such circumstances, it will be time enough to decide it when it is regularly brought before us.

The present question is rendered more important and interesting to the community, from the circumstance of the present defendant, and Alexander Russel, esq. having acted as justices of the peace of Adams county, since the equal division of the members of this court, on the former argument on the 1st January 1802. Mortgages and deeds acknowledged, or proved before them, may be thrown into jeopardy. Every judicial act, whether of a civil or criminal nature, which they may have performed since the division of York county, if their commissions cannot be sustained, will render the different officers trespassers, unprotected by the process which they have executed. But I do not bottom my opinion on these considerations. I have declared my sentiments, formed on mature consideration, as they were reduced to writing more than five years ago, with a few slight alterations.

Upon the whole, the defendant, Mr. M'Clean, holds his office as a justice of the peace, under the constitutional tenure of good behaviour; and the independence of the judicial department is of great importance to the liberty and happiness of the community. He has been duly commissioned in a convenient district, directed by law, from which he has never removed, and that district still continues. He has not been convicted of misbehaviour in office, or of any infamous crime; nor have both houses of the legislature addressed the governor for his removal. I therefore am of opinion, that his commission as a justice of the peace of Adams stands in full force; and that the information *409] *prayed against him in the nature of a *quo warranto,* should not be granted.

BRACKENRIDGE, J. A county is a corporation, with commissioners, treasurer, coroner, sheriff, constables, justices of the peace, judges of the courts, &c. It is struck off from the state at large, and may be, as in this case, within the bounds of an old county; but it becomes a distinct and independent body. Can the commissioners, treasurer, coroner, sheriff, &c. of the old

county, continue to act within the new? Not unless their authority is specially saved in the act of incorporation of the new. This has been done in the erecting many counties. It has been done as to certain officers in erecting this county. 4 St. Laws 533. "The sheriff, coroner, and public officers, of the county "of York, shall continue to exercise the duties of their respec- "tive offices within the county of Adams, until similar officers "shall be appointed agreeably to law within the said county of "Adams."

Is a justice of the peace such an officer as is within the meaning of this act? If so, he is at least supersedable, and superseded at all times by the elections or appointments of others of the same description and authority, in the ordinary way provided by the constitution and the laws of the commonwealth.

But can an officer of the old county, the justice of the peace in question, falling as to residence within the new, act within the new, independent of any legislative act? How can he become known to the new? There seems some *copula* wanting to connect him with it.

It may be matter of authority, to consider what has been the legislative construction in the case. By implication, we have abundant evidence.

Our first legislative act is that of erecting Lancaster county. By this act it is provided that the county of Lancaster shall enjoy all and "singular the jurisdictions, powers, rights, &c. "which any other county doth or may, or ought to enjoy." 1 St. Laws 242. But nothing is said specially of the appointment of the justices.

The act for erecting York county, specially provides even for the jurisdiction of the Supreme Court; and justices (meaning county justices) shall be commissioned by the governor. Ib. 326.

In erecting the counties of Cumberland, Berks, Northampton, Bedford, Northumberland, it is provided in the same words as to the Supreme Court, and as to the justices. Ib. 328, 352, 562, 607, 663.

These acts were under the proprietary government.

*In erecting the county of Washington, under the con- [*410 stitution of September 28th, 1776, the jurisdiction of the Supreme Court is' preserved; and it is directed, that justices shall be elected in the townships and commissioned by the president and council. Ib. 874.

In erecting the county of Fayette, (2 St. Laws 155,) provision is made in like manner; and also for the first time, it is provided in the act of incorporation, "that the justices of the peace "commissioned at the time of passing this act, and residing "within the county of Fayette, or any three of them, shall and "may hold courts of General Quarter Sessions of the Peace "and General Gaol Delivery, and County Courts for the holding "of Pleas, and shall have all and singular the powers, rights, jur-

4 YEATES—25

"isdictions and authorities, to all intents and purposes, as other "the justices of the Courts of General Quarter Sessions and "justices of the County Courts for holding of Pleas in the oth- "er counties may, can, or ought to have, in their respective coun- "ties."

It is observable, that it is as judges of courts, authority is given them, not as justices of the peace, generally for the keeping of the peace and the recovery of debts. By the constitution of 1776, chap. 2, sect. 26, the legislature may establish courts, and under this power it may have been, that they undertook to establish judges.

In erecting the county of Franklin, it is provided, "that the "justices of the peace of the present county of Cumberland, "which will be hereafter within the said county of Franklin, "shall be justices of the peace for the said county until the "expiration of their several terms, for which they were respec- "tively appointed." 2 St. Laws 116. This goes the whole length of the powers of a justice of the peace.

In erecting the county of Montgomery, power is given to justices commissioned in the old, to act as justices in the new. Ib. 221.

In erecting the county of Dauphin, justices already commissioned are authorised to act as judges. Power is not given to act as justices of the peace generally. 2 St. Laws 254.

In erecting the county of Luzerne, provision is made for the electing and commissioning justices. Ib. 466. Nothing is said relative to justices already commissioned.

In erecting the county of Huntingdon, the justices of the peace commissioned at the time of this act, and residing within the bounds and limits of the said county, shall be justices of the peace for the said county, during the time for which they were so commissioned. Ib. 527.

By the act erecting Allegheny county, provision is made, that 411*] *justices now commissioned and within the limits of the new county, may hold courts. Ib. 595.

By the act erecting Mifflin county, justices commissioned at the time and residing, &c., shall be justices of the peace for the new county. Ib. 718.

By the act erecting the county of Delaware, "the justices "then in commission are authorised to hold courts; and that all "public officers other than justices of the peace shall continue "to exercise the duties of their respective offices, until similar "officers shall be appointed." Ib. 732. This clause implies several things. 1st. That a justice of the peace might be comprehended under the terms "public officers." 2dly. That he could not act without the aid of the legislature.

It has been doubted, and might well be doubted, whether as a justice of the peace deriving his constitutional existence from the commission of the president and council, he could derive any extension of authority, from an act of the legislature. So

[Respublica *v.* M'Clean.]

far as respected their authority as justices of the peace generally, this legislature excepted it.

The act of assembly erecting Lycoming county is the first erecting a county, after the constitution of 2d September 1790. 3 St. Laws 716. It is provided that the president of the 3d district, of which district the said county of Lycoming is hereby declared to be a part, shall have like power, &c. but no notice is taken of the associate judges that might fall within it, nor of justices of the peace.

In erecting the county of Wayne, it is provided, "that the "sheriff, coroner, and other officers of the county of Northamp"ton, other than the justices of the peace, shall continue to "exercise the duties of their respective offices within the county "of Wayne, until similar officers shall be appointed agreeably "to law within the said county." 4 St. Laws 242. This act is under the constitution of 2d September, 1790.

In the act ‚erecting Centre county, the jurisdiction of the Supreme Court, as in all the other acts, is extended, and that of the district presidents; but no notice is taken of justices of the peace. Ib. 542.

In erecting the last counties in the state, those of Beaver, Butler, Mercer, Crawford, Erie, Warren, Venango and Armstrong, the authority of the judges of the Supreme Court and district president is extended, but no reservation of the powers or authority of an associate judge, or a justice of the peace.

*Expressio unius est exclusio alterius.* The question will then come to this. Can the justices of an old county act in the new without the reservation of their authority, by the legislature, in the incorporating act? How can he be known to the new county? *Can the justice of York county in his commission, begin his precept, "Adams county *scilicet?*" In this case, he [*412 might act in both counties; in the old county, by the authority of his commission, and in the new, by virtue of his residence.

But is not his commission during good behaviour, and can the legislature by erecting a new county, in fact abolish it? It does not affect his commission; it abridges or takes away the sphere of action only: his commission was taken, subject to the eventual subdivision of the county; a power which the legislature has and must exercise. And I take it, there is no privation of right in the case; and that independent of the aid of the legislature, to say the least of it, a justice acting in one county under colour of a commission in another is a trespasser.

The strongest thing that occurs to me, to be said to the contrary, is the term "public officers," in the act for erecting the county of Adams. " The sheriff, coroner and public officers of "the county of York, shall continue to exercise the duties of "their respective offices within the county of Adams, until simi"lar officers shall be appointed, agreeably to law, within the said "county of Adams."

In the acts for erecting the counties of Delaware and Wayne,

[Sharp's Lessee v. Petit.]

there is the like provision, with an exception " as to justices of " the peace ; " which exception, I take to be explanatory, and not implicatory, that under the term "public officers " justices of the peace could be comprehended. It is as much as to say, by "public officers " we do not mean, justices of the peace. Independent of the explanation, it must have been evident, as in the case before us, that the legislature could not mean these. The reservation of authority is in favour of public officers, until similar shall be appointed. The provision therefore must respect, officers, supersedable by the appointment of similar. Under the term "public officers " therefore, I take it, justices of peace are not comprehended. There being no legislative act in conservation of their authority, and extension of it to the new county, it can be known only to the old.

The argument comes to this, that the commission of the justice of the old county does not enure for the use of the new, unless there is a saving of his jurisdiction in the erection of the new ; that is, the new county erected subject to the jurisdiction, if this could be done. It does not lie upon me to say, that it could. But *a fortiori* it cannot be without. And in this case, there is no saving, but the new county laid out without respect to the jurisdiction of the justice. He may remain a justice of the old county therefore, and may withdraw within it, and act, but has no connection with the new. He is not known to it *de facto*, nor by operation of law, nor by legislative exception, or recognition, or new 413*] *commission from the governor by virtue of his signature to a law directly, or by implication authorising him to act, if the signature could be supposed to have that effect ; which it is not necessary for me to say that it has ; but certainly without it, there cannot be authority, for an officer dismembered from an old county, to act in a new.

Motion of the Attorney General granted.

Explained and distinguished in 62 Pa. 351 where it is said that a similar case could not arise under the constitution of 1838 which provides for the election and commissioning of justices of the peace for townships, wards and boroughs. A similar provision is contained in article V. sec. 12 of the Constitution of 1874. If a township, were set off to a new county the commission of the justice would legally remain in force : *Ex parte McCollum,* 1 Cowen (N. Y.) 550.